## MEAD v. MERRILL & a.

It is no defence to a promissory note, given upon a sale by the payee to one of the signers, of property used in carrying on a particular business, and of the good will of the business, that the father-in-law of the vendee was induced to become surety for him upon another note, given as a part of the consideration of the sale, in order to aid his son-in-law in establishing himself in the business, and that the surety understood the note signed by him to be the whole consideration — the fact that the other note was given being purposely concealed from him.

Evidence that the business was unprofitable immediately after the sale, while carried on by the vendee, has no legitimate tendency to prove that it was so while carried on by the vendor, at, and immediately previous to the sale, for the purpose of showing that representations made by the vendor at the time of the sale as to the profitable character of the business were false and fraudulent.

ASSUMPSIT on a promissory note, dated September 25, 1851, for $200, payable to Ed. H. Mead, or order, in ninety days, and endorsed to the plaintiff. There was evidence tending to prove that the note was transferred to the plaintiff after it became due, and was given for the good will of the shoe freighting business between Pittsfield and Lynn, in which the said Ed. H. Mead had been engaged for some time before the date of said note ; that about the date of said note he sold his team to the defendant Merrill, for $500, who gave him his note therefor, which his father-in-law, James Johnson, signed as surety ; and that the note in question was given for the good will of said business. The defendants contended that said note of $200 was procured by fraud and misrepresentation ; that at the time of the said trade between said Ed. H. Mead and the defendant Merrill, he represented the said shoe freighting business to be good and profitable business, when in fact it was unprofitable and good for nothing. After offering some slight evidence in relation to the character of the business before the said trade, the defendants offered evidence to prove that immediately after the said trade, and during the time the said Merrill was conducting it, it was unprofitable and worthless, as evidence of the character and condition of the business at the time of the trade. To this evidence the plaintiff objected, and the court excluded it.

The defendants also offered to show that the said James Johnson was induced to become surety on the said note of $500 upon the representation of the said Ed. H. Mead that the $500 note was the price of the whole property, and that the giving of the note in suit was concealed from the said James Johnson by said Mead; that the said James Johnson was the father-in-law of the said Merrill, and was induced to become surety on said note to aid his son-in-law to establish himself in business, and would not have signed the said note of $500 had he known the whole fact. This evidence was objected to by the plaintiff, and excluded by the court. A verdict was found for the plaintiff.

To the ruling of the court, excluding the evidence offered as aforesaid, the defendants excepted, and move for a new trial.

*H. A. Bellows,* for the defendants.

I. The proof of the condition of the business immediately after the sale should have been admitted.

The question was as to the condition of the business at the time of the sale. Proof of its condition *after*, stands upon the some footing as *before*. It is like the case of proof of value where sales about the time, both before and after, are received in evidence. The condition of the business the day before would obviously furnish no better guide than its condition the day after.

II. The surety, James Johnson, was induced to sign the other note to aid his son-in-law in establishing himself in business, and would not have so signed had not the payee concealed from him the fact that this was not the whole price of the property. If, then, the plaintiff can compel the defendants to pay this note, the object of the payee is accomplished, and the surety is defrauded.

It comes fully within the principles applied to cases of composition. See the opinion of the court in this same case when formally before the court, 10 Foster 472.

The additional facts contained in the present case, that James Johnson was the father-in-law of Merrill, and was induced to sign the other note in order to aid his son-in-law in establishing himself in business, brings this case within the suggestion made by the court in that case.

The counsel also cited Chitty on Contracts, 5th Amer. Ed. 527, 528, 623 ; *Pidcock* v. *Bishop*, 3 B. & C. 605 ; *Jackson* v. *Duchaine*, 3 T. R. 551 ; *Cockshott* v. *Bennett*, 2 T. R. 763 ; *Trumbull* v. *Tilton*, 1 Foster 128 ; *Leicester* v. *Rose*, 4 East 372, and Story on Contracts, sec. 884.

*Butters & Hayes*, for the plaintiff.

SAWYER, J.* The evidence offered in relation to the unprofitable character of the business after the sale, while it was conducted by Merrill, had no legitimate tendency to prove the fact sought to be established, namely, that it was unprofitable at the time of the sale under the management of Mead. Whether a branch of business like that of a common carrier is or not profitable, depends so much upon the character of the person by whom it is conducted, his good or bad management, the confidence reposed in him by those who may have occasion to give him employment, and other like circumstances, that the success or failure of one person to make it a profitable business furnishes no just ground for the inference that it may or not be made so by another. If the representation of Mead that the business was a profitable one, is to be understood in reference to its intrinsic character, independent of any peculiar fitness or unfitness of the individual for managing such business, the evidence would be equally incompetent. If admitted, it would have raised the collateral issue, whether Merrill's want of success was not in fact the result of his want of judicious management rather than of the intrinsically unprofitable nature of the business. Before any weight could properly be given to the evidence, enquiry must be made into the circumstances connected with his conduct of the business, and for this collateral enquiry the plaintiff, upon the issue to be tried, could not be expected to be prepared. In any view the evidence was properly excluded.

When this case was considered by the court, as reported in 10

* PERLEY, C. J., did not sit.

Foster 472, it was upon a state of facts somewhat varying from that now presented. In this case the evidence offered showed that Johnson, the surety upon the note not declared on, was the father-in-law of the principal Merrill, one of the defendants in this action, and that he became surety for the purpose of aiding his son-in-law in establishing himself in business. These facts were not contained in the former case. The addition of these facts, however, does not change the law of the case. The relation between the father and son-in-law, in reference to this transaction, was merely that of principal and surety, as in ordinary cases. The fact that the surety was the father-in-law of the principal, and became surety from the motive of rendering aid to his son-in-law, does not present a case for the application of legal principles differing from those to be applied in other cases of suretyship. The motive in all cases of suretyship may be supposed to be, to render aid to the principal, and merely because of the existence of such motive, and of the relationship, whether by blood or marriage, it is not to be understood that a state of tutelage or wardship of the principal to the surety exists, or may be inferred to exist, upon which a presumption might arise that the latter in assuming the suretyship was arranging an advancement for the former.

Whatever defence these facts might furnish to Johnson, the surety, against the note for $500 signed by him as surety, they furnish none to the defendant Merrill against the note in suit.

*Judgment on the verdict.*